UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMIE A. ROYSTON,

    Plaintiff                                      Civil Action No. 09-12132

v.

                                           District Judge Lawrence P. Zatkoff
                                           Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jamie A. Royston brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits. Before the Court are the parties' cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED, reversing the decision of the Commissioner and remanding to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on February 14, 2006, alleging disability as of November 22, 2004 (Tr. 41-43). After the initial denial of benefits on June 5, 2006, Plaintiff filed a request for an administrative hearing, held on November 22,

2007 in Oak Park, Michigan[1] (Tr. 350). Administrative Law Judge ("ALJ") Jerome B. Blum presided (Tr. 352). Plaintiff, represented by attorney Karl Brown, testified, as did vocational expert ("VE") Elizabeth Pasikowski (Tr. 352-373, 373-375). On April 8, 2008, ALJ Blum determined that Plaintiff was not disabled (Tr. 15-16). On February 27, 2009, the Appeals Council denied review (Tr. 3-5). Plaintiff filed for judicial review of the administrative decision on June 2, 2009.

## BACKGROUND FACTS

Plaintiff, born May 8, 1971 was one month short of her 37th birthday when the ALJ issued his decision (Tr. 41). Plaintiff completed a master's degree and worked previously as a middle school teacher and food preparer (Tr. 56, 62). Plaintiff's application for benefits alleges disability as a result of symptoms of Meniere's disease (Tr. 55).

### A. Plaintiff's Testimony

Plaintiff, single, testified that she completed a master's degree in education and had worked as a middle school teacher prior to becoming disabled (Tr. 353). She reported that her teaching position required her to stand or walk frequently and lift up to ten pounds (Tr. 353-353). She stated that the initial symptoms of Meniere's disease ("Meniere's") were limited to sporadic dizziness, but later included nausea and vertigo (Tr. 355). She noted that episodes of vertigo, lasting up to 16 hours, were typically followed by up to a full day of exhaustion (Tr. 355). Plaintiff also noted that problems created by Meniere's were exacerbated by lupus (Tr. 355). She estimated that she experienced three to five episodes of vertigo each week (Tr. 356). Reporting that she sometimes received help with meal preparation and shopping from family and friends, Plaintiff acknowledged that she continued to drive and perform at least a portion of her shopping chores (Tr. 357). She testified that she

---

[1]Listed incorrectly in the hearing transcript as Oak Park, Illinois (Tr. 350).

changed positions with care to avoid precipitating vertigo, adding that she had recently fallen and injured her shoulder as a result of balance problems (Tr. 357). Plaintiff denied that a prior right hip surgery created limitations (Tr. 358).

Plaintiff, testifying that she had undergone ear surgery in an effort to cure Meniere's, noted that a temporary ear device gave her limited relief (Tr. 359). She indicated that her treating physician was considering the permanent implantation of tubes (Tr. 360). She reported that she currently took Valium, Dyazide, and Topamax, adding that Antivert did not help her symptoms (Tr. 361). She opined that unpredictable spells of vertigo would prevent her from even sedentary work (Tr. 362-363). Testifying that sitting did not improve vertigo, Plaintiff indicated that she obtained relief by taking a Valium and sleeping for several hours (Tr. 363-364).

Plaintiff reported that her symptoms of lupus included body pains, a facial rash, and light sensitivity, adding that she currently took Plaquenil for the condition (Tr. 368, 370). She indicated that she no longer used steroids and that the disease was "under control" (Tr. 368, 370). Plaintiff indicated that her most recent hip surgery was in 2005 (Tr. 369-370). She also reported ongoing muscle pain as a result of fibromyalgia, noting that she currently took Flexeril (Tr. 370). Plaintiff testified that she was currently receiving disability retirement and long-term disability benefits (Tr. 372-373).

### B. Medical Evidence

#### 1. Treating Sources

In December, 2000, Plaintiff was prescribed an increased dosage of Nortriptyline after experiencing daily headaches (Tr. 162). In March, 2001, James R. Gramprie, M.D., noting that Plaintiff was doing "quite well," recommended that Plaintiff taper off the Nortriptyline (Tr. 159). In February, 2003, Plaintiff reported daytime fatigue and vertigo (Tr.

156). A March, 2003 MRI of the brain, taken in response to Plaintiff's complaints of dizziness, was normal (Tr. 165). The following month, Dr. Gramprie, noting symptoms of Meniere's, observed that Plaintiff also exhibited signs of lipedema (Tr. 155). Plaintiff was prescribed Dyazide in December, 2003 (Tr. 153). In June, 2004, Plaintiff reported fatigue (Tr. 318). In October, 2004, Vanika Lath, M.D., noting a diagnosis of systemic lupus erythematosus, noted that the disease did not involve "any major organs" (Tr. 178-179). November, 2004 hearing tests and an MRI of the brain, taken in response to Plaintiff's renewed complaints of vertigo, were normal, but videonystagmography ("VNG") testing showed a "hyper-responsive vestibular system" (Tr. 117, 163, 233). In December, 2004, Dr. Anton Bahu, D.O. noted that Plaintiff's symptoms of lupus included a rash, photosensitivity, and arthralgias (Tr. 176). The same month, Dr. Seilesh Bahu M.D. noted that Plaintiff continued to report dizziness, but remarked that symptoms were "slightly" better (Tr. 220). An MRI of the brain was normal (Tr. 340-341).

In February, 2005, Debby Feinberg, O.D. modified Plaintiff's lense prescription in response to complaints of dizziness, noting that dizzy spells had been reduced by 40 percent (Tr. 119-120, 247). The same month, imaging studies of the brain showed "[m]ild asymmetry with mild decreased activity in the left temporal lobe" (Tr. 121). Dr. Gramprie opined that the asymmetry was not "of any significance" (Tr. 146). Also in February, 2005, a paranasal sinus examination was normal (Tr. 128). In April, 2005, Dr. Anton Bahu attributed Plaintiff's symptoms to vestibular migraine rather than Meniere's or lupus (Tr. 174). The following month, H. Alexander Arts, M.D. recommended "a trial of prophylactic migraine medications" (Tr. 172). An August, 2005 x-ray of the chest was normal (Tr. 126). The same month, Dr. Bahu cleared Plaintiff for ear surgery (Tr. 122), and on August 17, 2005, he performed a right endolymphatic sac decompression, removing fluid from the

middle ear (Tr. 134, 346-347). Plaintiff reported initially good results, noting that between August 17 and 29, she had only one "vertiginous spell" (Tr. 143, 312).

However, the following month, Plaintiff sought a second opinion at the Cleveland Clinic after nausea and vertigo forced her to abort a work attempt (Tr. 136-137, 141, 220). The examining physician, agreeing with the diagnosis of Meniere's, noted that the previous month's surgery had not alleviated Plaintiff's symptoms (Tr. 137). In October, 2005, Plaintiff told Dr. Bahu that her symptoms of dizziness were worse (Tr. 216).

January, 2006 treating notes show that Plaintiff, experiencing continuing vertigo and hypothyroidism, also received a prescription for Effexor for symptoms of depression (Tr. 139, 289). The following month, Plaintiff reported continuing joint pain and dizziness, but "minimal" symptoms of fibromyalgia (Tr. 167, 283). A March, 2006 ENG suggested "a central vestibular disorder" (Tr. 342). August, 2006 treating notes indicate that Plaintiff underwent a hysterectomy (Tr. 265). The following month, Dr. Gramprie remarked that Plaintiff now experienced vertigo four times a week (Tr. 363). Dr. Arts remarked that dizziness and vertigo had not been relieved by ear surgery, a low sodium diet, steroid treatment, or other medication (Tr. 306).

In January, 2007, Plaintiff was prescribed Flexeril for symptoms of fibromyalgia (Tr. 299). In February, 2007, Dr. Bahu completed a "Disability Report" on behalf of Plaintiff's benefit claim, opining that she was disabled as a result of "advanced balance problems" (Tr. 204). Finding that Plaintiff was unable "to stand for prolonged periods," he also stated that Plaintiff was limited to lifting or carrying ten pounds on an occasional basis, sitting continuously, standing frequently, and walking occasionally (Tr. 208). Dr. Bahu found that Plaintiff was limited to occasional climbing (no ladders), balancing, stooping, kneeling, crouching, and crawling and occasional reaching (Tr. 208-209). He found that Plaintiff was

limited to occasional exposure to extreme heat and cold, humidity, vibration, and odors/fumes (Tr. 209).

In March, 2007, Plaintiff's lupus was deemed stable (Tr. 297). In September, 2007, Plaintiff sought urgent treatment for severe headaches (Tr. 257). The same month, Dr. Bahu found that Plaintiff was able to sit for a maximum of four hours and stand and walk for one hour (Tr. 321). He precluded all balancing, climbing, and crawling, but found that Plaintiff could push/pull, reach, handle, and feel frequently (Tr. 321). In October, 2007, Dr. Gramprie, completing a workplace abilities assessment, found that Plaintiff was limited to lifting ten pounds, but could sit, stand, or walk for up to eight hours a day (Tr. 338). Plaintiff was precluded from climbing but able to perform all other postural activities frequently (Tr. 338). Dr. Gramprie concluded that although Plaintiff was unable to return to her former work, she was capable performing jobs that took into account limitations as a result of vertigo (Tr. 338).

**2. Consultive and Non-Examining Sources**

In April, 2006, Ibrahim Youssef, M.D. examined Plaintiff on behalf of the SSA, remarking that Plaintiff reported decreased symptoms of depression by taking Effexor (Tr. 188). Plaintiff indicated that vertigo/dizziness, along with nausea, was not responsive to diuretics and that she was forced to quit working in October, 2004 (Tr. 188). She also noted that ear surgery had not alleviated the condition (Tr. 188). Plaintiff exhibited normal self esteem, motivation, and social skills (Tr. 189). Dr. Youssef assigned her a GAF of 60-65 (Tr. 190).

The same month, a Physical Residual Functional Capacity Assessment found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand, sit, or walk for six hours in an eight-hour workday; and had an unlimited ability to push or pull (Tr. 91). She

was limited to frequent (as opposed to *constant*) climbing of ramps and stairs, kneeling, and crawling with occasional balancing and stooping (Tr. 92). Noting Plaintiff's history of positional vertigo, the Assessment precluded her from all climbing of ladders, ropes, or scaffolds (Tr. 92). The Assessment found no manipulative, visual, or communicative limitations, determining that Plaintiff's environmental impairments were limited to a preclusion on working with machinery or at heights (Tr. 94).

In May, 2006, a Psychiatric Review Technique found that Plaintiff's affective disorder (depression) was non-severe (Tr. 100). Plaintiff's functional limitations as a result of depression were deemed either mild or non-existent (Tr. 110). The evaluator noted that Plaintiff's activities of daily living were "not much limited" by her conditions (Tr. 112).

In October, 2006, John Fink M.D. conducted a consultive medical evaluation on behalf of the Plaintiff, noting her complaints of ongoing dizziness and hypothyroidism (Tr. 193). Dr. Fink opined that unpredictable episodes of dizziness, nausea, and vomiting precluded all work (Tr. 195). He declined to complete a questionnaire regarding Plaintiff's exertional and postural capacities, but found that Plaintiff "has a balance problem of undiagnosed cause" (Tr. 200).

### C. Vocational Expert Testimony

VE Elizabeth Pasikowski classified Plaintiff's former job as a teacher as skilled at the light exertional level, noting the absence of transferrable skills to the sedentary exertional level[2] (Tr. 374). The ALJ posed the following hypothetical question:

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent

> "Assuming that she couldn't stand most of the day or work with 20 pounds, let's go into unskilled work and let's talk about unskilled non-industrial work. If there are such jobs, what are they and in what number [do] they exist in the city, state, and the country?"

(Tr. 374). The VE replied that the hypothetical individual could perform the work of an information clerk (1,500 jobs in the Detroit metropolitan area), reception clerk (1,800), ID clerk (1,200), and video surveillance monitor (1,700); doubling the numbers for the entire state of Michigan (Tr. 374). The VE stated that her testimony was consistent with the Dictionary of Occupation Titles ("DOT") (Tr. 374). In conclusion, the VE found that Plaintiff's claim that she needed to sleep off symptoms of Meniere's several times a week, if fully credited, would preclude all work (Tr. 375).

### D. The ALJ's April 8, 2008 Decision

ALJ Blum acknowledged Plaintiff's conditions of Meniere's disease, systemic lupus erythematosus, Reynaud's syndrome, asthma, fibromyalgia and depression, but found that none of the conditions met or medically equaled the conditions listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 12). The ALJ found a Residual Functional Capacity ("RFC") for "the exertional and non-exertional requirements of sedentary work" (Tr. 15). Citing the VE's job numbers, he concluded that Plaintiff could work as an information clerk, reception clerk, identification clerk, and a video surveillance monitor (Tr. 15).

Concluding that Plaintiff's allegations of disability were "not wholly credible," the ALJ observed that objective medical testing did not support her alleged degree of limitation (Tr. 12-13). He rejected Dr. Bahu's conclusion that Plaintiff was totally disabled, observing that the physician's opinion was inconsistent with his own treating records and Plaintiff's activities of daily living (Tr. 14).

---

lifting or carrying of objects weighing up to 50 pounds.

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment

listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Substantial Gainful Activity

Plaintiff argues first that the ALJ's incorrect statement that she performed substantial gainful activity ("SGA") in 2005 and 2006 constitutes reversible error, pointing out that her income for these years was derived exclusively from disability payments and one 2005 work attempt. *Plaintiff's Brief* at 25, *Docket #32* (*citing* Tr. 15); *Docket #22-2*. In response, Defendant concedes the ALJ's misstatement but submits that the error was harmless. *Defendant's Brief* at 12-13, *Docket #26*.

The ALJ's erroneous finding that the work attempt and disability income amounted SGA, by itself, does not amount to reversible error. First, a finding that the claimant has performed sustained SGA during the course of the alleged disability period would have ended the analysis at Step One. 20 C.F.R. §416.920(a). As pointed out by Defendant, the ALJ proceeded to Step Five before making his determination, acknowledging in effect that Plaintiff's limited work activity was not sufficient to find that she was non-disabled at Step One. Second, although the ALJ did not state explicitly that the Plaintiff's brief return to the teaching position in 2005 was a "work attempt" (rather than SGA) he recognized elsewhere in the opinion that Plaintiff "returned to teaching but was unable continue after three weeks

due to increasing symptoms" (Tr. 13). Third, the ALJ's findings contain no indication that the "SGA" error at Step One tainted the remainder of his findings, *i.e.,* citing the 2005 work stint to discount her allegations of disability or suggesting that the disability earnings from 2005 and 2006 resulted from "under the table" work activity.

### B. The Credibility Determination

Next, Plaintiff takes issue with the ALJ's credibility determination. *Plaintiff's Brief* at 25-31. Citing *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 248-249 (6th Cir. 2007), she contends that the ALJ's citation of her daily activities, taken out of the context of her entire statement, amounts to a distortion of the record. *Id.* at 21

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986); SSR 96-7p. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." Plaintiff, focusing on the second prong of SSR 96-7p, argues that substantial evidence does not support the ALJ's assessment of her daily activities.

To the contrary, the ALJ offered "specific reasons" for his credibility finding. *Rogers*, *supra,* 486 F.3d 234, 248-249 (*citing* SSR 96-7p). He found that despite Plaintiff's limitations, she continued to drive, shop, "keep doctor appointments," and take care of household and personal needs (Tr. 14 *citing* 76-80). Plaintiff contends specifically that the ALJ ignored the her statements that she slept between 12 and 18 hours a day and had given

up most pastimes (Tr. 75, 79). However, despite her statement that she slept between 12 and 18 hours a day on "[m]ost days," the admission that she continued to care for her own grooming needs, perform household and laundry chores, prepare meals every day and shop for food, prescriptions, and household items undermine her claim that she spent most of her time sleeping or bedridden (Tr. 76-78).

Likewise, while Plaintiff claimed that her activities were curtailed by symptoms of Meniere's, she admitted that she continued to drive (Tr. 78). Plaintiff qualified this admission by stating that she did not drive when experiencing dizziness, but admitted that she experienced unanticipated dizzy spells (Tr. 78). If true, this would presumably preclude *all* driving. Plaintiff also acknowledged that she continued to manage her financial matters and did not experience significant problems handling stress (Tr. 78, 81).

Plaintiff contends that her medical treatment records support a disability finding. However, with the exception of November, 2004 VNG testing (Tr. 117, 163, 233) and a March, 2006 ENG (Tr. 342), objective medical testing showed normal results. Treating notes indicating ongoing dizziness and vertigo reflect Plaintiff's own self-reported claims of limitations rather than objective medical testing (Tr. 128, 136-137, 216, 220). Because record evidence supports the ALJ's conclusions, the deference accorded an ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

### C. The Treating Physician Analysis

Plaintiff takes issue with the ALJ's rejection of Dr. Seilesh Bahu's February, 2007 assessment of her residual abilities. *Plaintiff's Brief* at 31-33. Citing 20 C.F.R. § 404.1527(d)(2), she contends further that the ALJ ignored the treating physician's additional

September, 2007 findings. *Plaintiff's Brief* at 31.

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, the she must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)). An ALJ's failure to explain his reasons for rejecting a treating physician's opinion constitutes reversible error. *Id.* at 546.

Specifically, Plaintiff faults the ALJ's finding that Dr. Bahu "[did] not express an opinion as to whether the claimant is able perform work that primarily involves sitting." *Plaintiff's Brief* at 32 (*citing* Tr. 14). She submits that the ALJ ignored Dr. Bahu's *September*, 2007 assessment which found that Plaintiff was able to sit for a maximum of four hours and stand and walk for one hour, accompanied by a preclusion on all balancing, climbing, and crawling (Tr. 321).

While the ALJ conducted a "treating physician" analysis of Dr. Bahu's February, 2007 opinion, his opinion is silent as to the September, 2007 findings. Moreover, the ALJ's erroneous statement that Dr. Bahu did not comment on Plaintiff's ability to sit indicates that he not only failed to discuss, but actually overlooked the treating physician's findings as to Plaintiff's exertional and postural limitations. Whatever the strength of the remainder of the administrative findings, the failure to discuss or consider Dr. Bahu's September, 2007 findings constitutes reversible error. *Wilson, supra* 378 F.3d at 546.

**D. The VE's Testimony**

Aside from the fact that the failure to discuss Dr. Bahu's September, 2007 opinion is error *per se*, the ALJ's neglect in considering this assessment implicates the choice of hypothetical limitations and RFC. Plaintiff also argues more generally that the failure of the hypothetical question to account for her non-exertional limitations invalidates the Step Five finding that she could perform a significant range of sedentary work. *Plaintiff's Brief* at 33-34.

*Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987), sets forth the Sixth Circuit's requirements for a VE's testimony. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Id*. at 779 (internal citations omitted). The hypothetical question must be supported by record evidence. *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

The hypothetical question to the VE reads as follows:

> "Assuming that she couldn't stand most of the day or work with 20 pounds, let's go into unskilled work and let's talk about unskilled non-industrial work. If there are such jobs, what are they and in what number [do] they exist in the city, state, and the country?"

(Tr. 374).

On one hand, Plaintiff's fairly wide range of personal, household, shopping, and financial activities support the finding that she could perform a significant range of sedentary work. However, the ALJ's omission of *all* postural limitations from the hypothetical question stands unsupported by the record. *None* of the treating or consultive assessments suggests that Plaintiff was without any postural limitations. As discussed above, the

September, 2007 treating source opinion of Dr. Bahu found that Plaintiff was precluded from all balancing, climbing, and crawling (Tr. 321). Likewise, in October, 2007, Dr. Gramprie, noting Plaintiff's ongoing vertigo, precluded all climbing (Tr. 338). An April, 2006 Residual Functional Capacity Assessment performed on behalf of the SSA, also noting Plaintiff's history of nausea and vertigo, excluded any work involving the climbing of ladders, ropes, or scaffolds or working with machinery or at heights (Tr. 92-94). The omission of critical and undisputed limitations from the hypothetical question invalidates the VE's job findings.

Critical errors in the treating physician analysis and question to the VE mandate a remand. However, Plaintiff's proof of disability is not "overwhelming" and she is not automatically entitled to an award of benefits. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Instead, this case should be remanded to the administrative level for further proceedings , directing the ALJ (1) to discuss Dr. Bahu's September, 2007 findings and state his reasons for either rejecting or accepting the physician's opinion; and (2) to amend the hypothetical question to the VE to reflect Plaintiff's postural and environmental limitations.

## **CONCLUSION**

For these reasons, I recommend that Defendant's motion for summary judgment be DENIED and Plaintiff's motion GRANTED, reversing the decision of the Commissioner and remanding to the administrative level for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).[3]

---

[3]The district court's authority to remand a case for further administrative proceedings is found in § 405(g). *Hollon v. Commissioner,* 447 F.3d 477, 482-83 (6th Cir.2006). Sentence four of that section provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained

---

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand which does not grant benefits, but orders further administrative proceedings, must be done in conjunction with a final judgment. *See Shalala v. Schaefer*, 509 S.Ct. 292, 303, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (a sentence four remand requires entry of judgment); *Melkonyan v. Sullivan,* 501 U.S. 89, 101-02, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991) (a final judgment must accompany a sentence four remand order); *Berkowski v. Commissioner of Social Sec.*, 652 F.Supp.2d 846, 849 (E.D.Mich.,2009) ("the remand must be made post-judgment pursuant to sentence four of 42 U.S.C. § 405(g)"); *Siuta v. Commissioner of Social Sec.*, 2009 WL 275732, 1 (E.D.Mich. 2009) ("A judgment must be entered immediately with a sentence four remand and the district court does not retain jurisdiction during the administrative proceedings on remand" (citing *Melkonyan, supra*). Indeed, a prevailing lawyer in a sentence four remand cannot apply for attorney fees under the Equal Access to Justice Act ("EAJA") unless and until judgment is entered. *Shalala v. Schhaefer, supra.*

within the objections.

        S/R. Steven Whalen
        R. STEVEN WHALEN
        UNITED STATES MAGISTRATE JUDGE

Dated: April 27, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 27, 2010.

        s/Gina Wilson
        Judicial Assistant